M., ON BEHALF OF T., A MINOR, PLAINTIFF, v.
S., DEFENDANT.

Juvenile and Domestic Relations Court
Cumberland County

November 20, 1978.

*Mr. Rocco J. Tedesco* of counsel for defendant (*Messrs. Greenblatt & Greenblatt,* attorneys).

*Mr. Murray A. Talasnik* for *amicus curiae Stanley C. Van Ness,* Public Defender.

*Mr. Ivan M. Sherman* for County of Cumberland.

KLEINER, J. C. C. (temporarily assigned). This is a bastardy proceeding in which defendant, claiming indigency, was assigned counsel. An order was entered, pursuant to the procedure outlined in *Smith v. Walker,* 138 *N. J. Super.* 187 (Cty. Ct. 1975), and as further delineated in *State v. Horton,* 34 *N. J.* 518 (1961), that all pretrial and trial expenses, judicially determined to be necessary, would be reimbursable to assigned defense counsel by the county, provided the application for payment was on notice to the county treasurer. *State v. Horton, supra* at 535.

This court, in a letter opinion rendered in this matter, as a companion case with two other bastardy proceedings, distinguished this payment requirement by the county from the decision in *Lurry v. Mills,* 152 *N. J. Super.* 127 (Cty. Ct. 1977), insofar as there is no nexus in the case at bar between the party litigants and the county welfare board and due to this court's interpretation of the limitation of judicial power by the doctrine of separation of powers.

Following that holding, defendant's assigned counsel filed a notice of motion on notice to the county treasurer seeking the entry of an order requiring the county to pay for blood grouping tests and the costs of obtaining medical records respecting plaintiff's hospitalization at the time of the birth of her illegitimate child.

On the return day of the motion the county solicitor appeared and challenged the remedy sought, on essentially three grounds:

(1) The county did not receive prior notice that defendant claimed indigency and therefore was precluded from examining defendant on this issue. The crux of this argument is that insofar as the county may be called upon to pay necessary trial and pretrial discovery expenses of an indigent defendant's assigned counsel, it should have the opportunity to investigate the issue of claimed indigency by serving interrogatories upon defendant who claims indigency, and the right to participate in any judicial proceeding where an indigency adjudication is at issue.

(2) Even if a defendant is declared indigent so as to receive assigned counsel, such determination does not require that all necessary expenses are to be paid by the county insofar as the defendant may have the ability to pay for certain necessary expenses.

In response to these two points defendant's assigned counsel raised the issue as to whether he would be entitled to withdraw as counsel if it is determined that a defendant can pay some of the expenses of his defense, insofar as no provision is made to partially compensate him for his services.

(3) The prior court order, which was entered without the participation of county counsel, failed to provide for a procedure for reimbursement to the county of any costs expended, from defendant at some future date.

On the original date of this bastardy proceeding defendant denied paternity and requested the appointment of counsel due to indigency. The court, after questioning defendant under oath, determined he was 17 years old, unemployed and residing with his mother and four other siblings. His mother is receiving welfare assistance and is unable to contribute to the cost of retained counsel, per R. 5:3-3.(a).

The court declared defendant indigent and assigned him counsel from the rotating alphabetical list of the private bar. R. 3:27-2. This oral finding, however, was not reflected in the court's minutes of that date, and county counsel therefore sought the right to reinquire into the indigency issue by questioning the juvenile under oath in open court.

Inasmuch as a transcript of the original court proceedings had not been produced, and to test this issue, the court permitted the procedure requested. As of that date of the motion the juvenile defendant had been employed for a ten-day period as a farm laborer in a local seasonal food processing factory, but expected that his employment would be of short duration. He had no other available assets other than his current wages. On the motion day defendant was not indigent. Three days thereafter the court was notified by

letter that defendant did in fact become unemployed and was again reduced to indigent status.

These facts clearly raised questions of first impression:

(1) Once a court makes a determination of indigency, can that determination be questioned each time defendant's assigned counsel seeks an order for the payment of necessary expenses? Otherwise stated, is a determination of indigency for the purpose of assignment of counsel determinative of indigency on the issue of payment for necessary expenses?

(2) Should the court postpone hearings on indigency initially to permit discovery by county counsel and participation by county counsel at the indigency hearing?

(3) If the indigent can subsequently afford certain expenses, should he not also be deemed to afford a portion of his attorney's fee?

(4) If indigent for all purposes, should defendant be compelled to sign a reimbursement agreement with the county similar to the reimbursement agreement which criminal defendants execute with the Office of the Public Defender? *N. J. S. A.* 2A:158A–16 to 20.

The county's chief argument is that the determination of indigency for the purpose of assigning counsel cannot be determinative against it as the entity called upon to pay for services. Thus, the county argues that it has a right to employ discovery tactics in an effort to establish an indigent defendant's ability to pay or contribute to the cost of services necessary to his defense.

No specific authority is cited by the county to support its position as to discovery. Similarly, no case is pointed out in which an indigent defendant was *in fact* required to pay any or all of the costs of services necessary to his defense. Indeed, notwithstanding the provision or payment of counsel by private third parties for indigent defendants, payments by the State for psychiatrist and pathologist consultation have been ordered under *N. J. S. A.* 2A:158A–5 and 2A:158A–14, *State v. Stockling,* 153 *N. J. Super.* 362 (Law Div. 1977), and payment by the county for transcripts has been

ordered, *State v. Morgenstein,* 147 *N. J. Super.* 234 (App. Div. 1977).

In *State v. Ryan,* 133 *N. J. Super.* 1 (Cty. Ct. 1975), it is stated that before expert services are provided there must be adequate determination that a defendant is, in fact, indigent, and a finding that the services are necessary for an adequate defense. *Id.* at 10. The court in *Ryan* looked to the statute controlling federal courts in providing services to indigents, 18 *U. S. C. A.* 3006A(e). *Id.* at 9. That statute provides in part:

Counsel for [an indigent] who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an *ex parte* proceeding, that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant. [Emphasis supplied]

In an interpretation of that section the court in *Christian v. United States,* 398 *F.* 2d 517 (10 Cir. 1968), held, in part:

While every criminal defendant who is financially unable to obtain counsel is entitled to the appointment of counsel at government expense, not every similarly situated defendant is entitled to appointment of an investigator or for other expert services. The commissioner or court, before appointing counsel, need only be satisfied "that the defendant is financially unable to obtain counsel," but the court, before authorizing subsection (e) services, must also find "after appropriate inquiry in an *ex parte proceeding* that the services are necessary * * *". [at 519; footnotes omitted, emphasis supplied]

The specific holding of *State v. Ryan, supra,* was that "the defendant must show that the requested services are necessary for an adequate defense." 133 *N. J. Super.* at 10. *Christian v. United States, supra,* also dealt specifically with the issue of necessity. But it also pointed out that the appropriate time for a finding of indigency is when counsel is appointed. *Id.* Even if a second finding is necessary for services, the federal statute and *Christian* point out that

the appropriate proceeding is *ex parte,* thus militating against the county's position respecting pre-indigency adjudication, discovery proceedings.

This court is troubled by the suggestion that repeated findings of indigency and ability to pay are necessary. Legal Services determinations of indigency are binding on this court pursuant to the administrative directive published in the *New Jersey Law Journal* on August 3, 1970. 93 *N. J. L. J.* 577. The directive is still effective as to provision of counsel. *Lurry v. Mills, supra* 152 *N. J. Super.* at 130; *Smith v. Walker, supra* 138 *N. J. Super.* at 193. The Public Defender has broad powers under *N. J. S. A.* 2A:158A–14 to determine eligibility or require defendants to retain private counsel. If these determinations bind a court, a court's determination is equally binding on parties who may be called upon to provide services for the defense of an indigent.

In *Lurry v. Mills, supra,* the court held that a legal services determination of indigency is not binding on an unrelated public entity, but determined on the basis of defendant's affidavit of indigency that he was in fact indigent. *Contra, Smith v. Walker, supra,* 138 *N. J. Super.* at 193. However, there is a determinative factual distinction between the present case and *Lurry v. Mills.* Unlike the court in *Lurry,* which had not had the opportunity to make a determination of indigency with respect to the Legal Services client before ordering a public entity to provide and pay for services necessary to the defense, *this court* made a determination when it assigned counsel that this defendant was indigent.

Another important factor to be considered in weighing the efficacy of continuous discovery and findings of indigency is the cost of further hearings and legal consultations that necessarily follow. *In re Guardianship of Dotson,* 72 *N. J.* 112, 116 (1976). Illustratively, this court, the county solicitor, a public defender and appointed counsel spent over an hour simply arguing the motion in this matter.

A similar drain on resources is foreseeable if the county solicitor's requests for discovery, either before an initial determination of indigency is made or before a determination that services are required, are granted. R. 3:27–2 clearly does not provide for predetermination discovery by any party. Furthermore, at that initial stage of the proceedings the county's interest is undefined. Counsel has not yet been appointed for defendant; his strategy for defense is not set. Postponement for discovery at that point is not only wasteful and costly in terms of court time, but is also an inconvenience to plaintiff. Finally, the normal cost of a blood grouping test is far surpassed by the potential cost to the taxpayers of the requested discovery and related proceedings.

R. 1:13–2(b) is dispositive of the issue posed by defense counsel of the right to withdraw as counsel if a portion of counsel fees are not paid by a previously indigent defendant who becomes employed.

The rule mandates that an assigned attorney shall not accept or agree to accept or "seek to obtain from the client, payment of any fee." No attorney shall, however, be required to expend his personal money in the prosecution of the cause. R. 3:27–2 provides that representation by assigned counsel "shall continue through the trial." These provisions, taken together, appear to mandate representation to continue until the end of the case and preclude assigned counsel from seeking a fee, absent some exceptional circumstance for which the court could provide upon proper application by assigned counsel.

No disciplinary rule, court rule or ethics committee opinion in this State can be found on the precise issue of withdrawal of assigned counsel due to a fee dispute. However, it has been held that refusal to accept appointment as counsel for an indigent accused constitutes contempt of court. *State v. Corey*, 117 *N. J. Super.* 296 (Cty. Ct. 1971), aff'd sub nom. *State, In re Contempt of Frankel*, 119 *N. J. Super.* 579 (App. Div. 1972), certif. den. 62 *N. J.* 75 (1972), *cert.* den. 409 *U. S.* 1125, 93 *S. Ct.* 939, 35 *L. Ed.* 2d 257 (1973). By

implication, unless good cause is shown per *DR*–2–110 and *R.* 1:11–2, an indigent defendant should not be left without counsel merely because the assigned counsel seeks or believes he may now be entitled to compensation, *contra* to *R.* 1:13–2. Conduct that "interferes with or prejudices parties during litigation" constitutes contempt. *State v. Corey, supra* 117 *N. J. Super.* at 299. Nothing could be more prejudicial to an indigent defendant than withdrawal of his assigned counsel due to a dispute regarding his ability to pay.

Thus, if assigned counsel may not lightly enter into a fee dispute, no other party should be entitled to precipitate a dispute respecting a defendant's ability to pay when a court has determined that he is indigent.

█ For all of the foregoing reasons this court holds that a determination of indigency by a court for the purpose of assignment of counsel is determinative of the issue of providing services for the defense.

█ *In re Guardianship of Dotson, supra,* does not dictate a contrary result, as argued by the county. *Dotson* dealt specifically with the right of an indigent to a free transcript for appeal. Any language in the case must be read in that context. There are two less expensive alternatives for the provision of records on appeal provided by *R.* 2:5–3(c) and *R.* 2:5–3(e). 72 *N. J.* at 117. Depending on the length of trial and scope of appeal, the cost necessary to be undertaken may vary. *Id.* at 118. These considerations do not apply to blood tests in bastardy proceedings. There can be and is no question of their importance to a defense in a bastardy proceeding. *Smith v. Walker, supra* 138 *N. J. Super.* at 195–196. No less expensive alternative has been presented to this court. As to the medical records requested, however, the application and order should specify the particular records sought, stating the necessity therefor.

█ Should the indigent defendant be required to execute a reimbursement agreement with the county respecting the expenses which the county does absorb? The comment to *R.* 1:13–2 points out that the reimbursement and lien pro-

visions of the Public Defender Act, *N. J. S. A.* 2A:158A–16 to 20, "are regarded as being neither in conflict with nor abrogated by *R.* 1:13–2 or any other rule requiring and providing for no cost representation of indigents. *Stroinski v. Office of Public Defender,* 134 *N. J. Super.* 21 (App. Div. 1975)." *Pressler, Current N. J. Court Rules,* Comment *R.* 1:13–2, Stroinski at 32.

The county contends that in reality the expenses are payable by the Office of the Public Defender, *N. J. S. A.* 2A:158A–5 and 5.2, and are reimbursable to that office. The Public Defender contends that until such time as its office receives appropriate legislative appropriations it cannot assume the defense of indigents in bastardy proceedings.

This issue has previously been addressed by our courts. Our Supreme Court has stated in *State in the Interest of Antini, Jr.,* 53 *N. J.* 488, 495 (1969), that "if the appropriation made [to the Public Defender] proves insufficient in any fiscal year, we shall have to return for the balance of such year to the compensation scheme set forth in *Rush* [*State v. Rush,* 46 *N. J.* 399 (1966)], as to both adult and juvenile courts."

*Rush* held the county liable for the reimbursement of necessary expenses to assigned counsel for indigent defendants, pursuant to *State v. Horton, supra,* 34 *N. J.* at 534, 535, without requiring indigent defendants to execute reimbursement agreements. Until the Legislature directs otherwise, this court will refrain from judicially creating a county reimbursement agreement plan.

As previously ordered, pursuant to *State v. Horton, supra,* applications for payment of necessary expenses are to be filed on notice to the county treasurer. County counsel requests additional notice to his office to afford him the opportunity of questioning the necessity and scope of the services sought to be reimbursed. Insofar as the county does have the right to participate in these applications for actual payment, all future notices of motion shall be served on the county treasurer and upon the county counsel.